## JAMES CLARY *vs.* ANNIE T. WOLF.

### MAY 13, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, Sweetland and Vincent, JJ.

*(1)   Contracts.*

Evidence *held,* insufficient to show a contract between the parties.

*(2)   Evidence.*

In assumpsit to recover for work and labor the admission of question to defendant "you intended to have these steps fixed, at all events?" while immaterial was not prejudicial error.

*(3)   Contracts.   Acceptance.*

In assumpsit for work and labor in the construction of a staircase on property in possession of tenant of defendant, charge of the court, that if the jury found the work was done without request of defendant and under a mistake by plaintiff, and that defendant ordered it removed, yet if she used the staircase or permitted her tenants to do so, plaintiff could recover, constituted reversible error, since by the notice to remove the work performed without her knowledge defendant had done all she was required to do and there was no evidence of any use, by which a ratification might be shown.

Upon such facts the burden of seeing that tenants did not use a staircase which from want of proper surroundings was neither available nor led to anything which a tenant might require was not cast upon defendant and the fact that a tenant *might* have used the steps at some time would not amount to their acceptance by defendant.

ASSUMPSIT. Heard on exceptions of defendant, and sustained.

VINCENT, J. This is an action on the case in assumpsit brought to recover the sum of $56.35 for labor performed and materials furnished in the building and setting of a flight of steps, connecting different levels, upon a lot belonging to the defendant at Riverside.

The case was tried to a jury in the Superior Court and a verdict was rendered for the plaintiff for the amount claimed. The defendant's motion for a new trial, before the trial judge, was denied. The case now comes to this court upon defendant's exceptions; (1) that the justice presiding erred in his decision denying the defendant's motion for a new trial; (2) that the justice presiding erred in permitting the plaintiff's counsel to ask the defendant if she "intended to have these steps fixed at all events," and (3) that the justice presiding erred in the portion of his charge to the jury regarding the subsequent ratification of the contract by the defendant.

The defendant was the owner of an estate at Riverside, situated near tide water, upon which there was a dwelling house or cottage. Between the cottage and the water was a bank which required, for convenient passage from one level to the other, a flight of steps. Upon the lower level and near the water, it was the intention of the defendant, at some later period, to erect a bath house. The plaintiff, for several years, had been employed by the defendant, from time to time, in and about certain other of her property, located in the city of Providence, making small repairs, which were uniformly done under her immediate direction and supervision. In the spring of 1909, while one Olney Aldrich, an employee of the plaintiff, was doing some repair work at the defendant's house in Providence, it is alleged that the defendant made some remarks to him, in effect, that she would need some steps upon her Riverside estate and requested him to go there and take some meas-

urements. Upon this request, and without any further report to or conference with the defendant as to cost, location, etc., the plaintiff built and set the steps upon the defendant's estate.

The defendant refused to pay the bill when presented, and she testifies that she ordered the plaintiff to remove the steps; (1) because she had not ordered them; (2) because they were not satisfactory, and (3) because they were not located where she desired to have them.

The plaintiff in support of his claim alleges, and testifies, that subsequent to the time when the order for the steps was given to Aldrich, to wit, May 20, 1909, the defendant called at his office, for the purpose of paying a bill for some other work, and while there made some statements which were interpreted by him as a ratification of the order previously given to Aldrich; that she made some inquiries as to whether the measurements had been taken and expressed dissatisfaction upon learning that the work had not been completed.

There is a conflict of testimony as to just what was said between the parties, after the plaintiff had finished the steps, but there is no dispute on the part of the plaintiff that he proceeded to do the work and furnished the materials upon the simple request of the defendant to take measurements and her alleged subsequent ratification of the contract. It is undisputed that the plaintiff had not previously done any new or original work for the defendant and that such service as he had before rendered to her related to minor repairs which had been performed under her especial direction and supervision.

Taking the testimony for the plaintiff alone we do not see anything which would amount to a contract authorizing the plaintiff to proceed with this work, after making the necessary measurements, without some further act or direction on the part of the defendant.

The plaintiff does not claim any personal knowledge of the original contract with the defendant, but says he under-

stood that such a contract had been made with Aldrich. He claims, however, that she ratified such contract in a later interview with him. Upon this point the plaintiff testified as follows: "Q. 21. Now, what did she say to you? A. Finding fault with me because the work was not done according to orders. She was present at my office, and on that day, which I can give the date if you desire it, she made a payment of $10 on a previous account that was due me, and found fault then because I hadn't completed the stairs; and the reason that I gave to her, and the only reason, was the inclemency of the weather preceding that date. Q. 47. Now, you state that at that time she came in and found fault. A. I did. Q. 49. Can you remember the exact words she said? A. The conversation was fairly lengthy. I do not know as I can give the details of it, but a synopsis of it. Q. 50. See if I can recall to you the statement that was made. Was not this the statement. 'Have you been down to Riverside to my place?' A. No, sir, that was not mentioned in those words. I am positive of that. Q. 57. And the only thing at your office, she complained that you had not gone down? A. That I did not do the work. Q. 58. And what work, did she say, at your office? A. Building the steps. Q. 59. Was there any agreement or contract made at your office? A. No contract. The agreement, so far as she told me, was to build the steps immediately. She had the cottage let. Q. 97. Can you recall the exact conversation that you had on the 20th by which she authorized you to do this work? A. . . . The conversation is so involved I cannot tell it in detail. Q. 98. Kindly state what you can remember of the conversation. A. Miss Wolf wanted to know if the steps at Riverside had been placed there yet. Q. 99. I am talking about the exact words. Can you remember them? A. I cannot tell you in detail. Q. 100. Any exact words by which you assumed to have authority to build those steps. A. I am telling you; this woman found fault because I hadn't the work done there as ordered.

She was in a hurry for them on account of the fact that she had let the cottage, and there was a tenant who wanted to move in and use the place. Q. 105. And didn't she ask you to go down and estimate? A. No, sir. Q. 107. And isn't that all the conversation that she had with you in regard to the steps in 1909? A. In substance, yes, sir. Q. 108. That she wanted you to go down and figure on the steps? A. And finding fault because thay had not already been built or completed. . . ."

Olney Aldrich, the man with whom it is claimed the contract for the steps was made, testified to some conversation with the defendant, regarding steps, while he was doing some work for her at her house in Providence. "Q. 13. What was said at that time? A. She said she wanted a pair of steps built from the Riverside house, and wanted to know when I could go down and measure for them. Q. 17. Did she order the work done at that time? A. She told me to go down and measure for the work, yes, sir. Q. 51. All she asked you to do was to take measurements for the steps? A. Yes, sir."

The foregoing testimony of the plaintiff and his employee, Aldrich, comprises substantially all of the testimony upon which the plaintiff bases his claim of a contract to build the steps. The plaintiff had no personal knowledge of any contract through Aldrich, but he relies principally, so far as his testimony goes, upon the subsequent ratification at his office. He claims that the ratification of the contract was contained in some conversation of the defendant with him. His testimony upon that point, however, amounts to nothing more than his conclusions drawn from the language of the defendant which he can now neither repeat nor remember.

(1) Aldrich, the employee, in answer to the question "Did she order the work done at that time," referring to the time when the defendant asked him to make measurements, said, "She told me to go down and measure for the work, yes, sir." It is evident that this witness simply concluded

that the request to make measurements was equivalent to an order to go on and complete the work without further reference to the defendant.

Taking into consideration other undisputed testimony that the plaintiff had never before done any original work for the defendant; that the defendant did not know that the steps were being made or had been placed in position until she received the bill for them; that she was not consulted as to the place where they were to be located; that the place where they were located was not ready for their reception and that the bath-house, in connection with which the steps were to be used, had not been built, we do not find that there was that meeting of minds which is the essential feature of a contract. The court can hardly find that there was a contract and base such finding upon the interested opinion of the plaintiff as to the force and legal effect of the defendant's language which he has now forgotten.

(2) The defendant's second exception is based upon the ruling of the trial court, admitting the following question: "Q. 105. You intended to have these steps fixed, at all events."

This question was objected to by the counsel for the defendant, the objection was overruled and the witness answered, "From him?" "Q. 106. No, from some one. A. Yes, sir, I did."

While we cannot see that the ultimate intention or mental attitude of the defendant is either important or material, we cannot say that the answer to the question could have been appreciably injurious to the defendant's case.

(3) The portion of the Judge's charge excepted to contains in our opinion reversible error, and is as follows: "Now, gentlemen, if you find no request was made; that this staircase was built by him at his own volition, under a mistake, and that since that time there has been no ratification of the contract at all, or, as she says, she ordered him to take it away, then your verdict should be for the defendant. As I say, unless there has been some ratification of

that contract; and he says there has, because since that time this property has been let to tenants who could, if they wanted to, use the staircase in question.

"If that be so, and you find that although there was no request in the beginning to build this staircase, and he built it under a mistake, if you find that subsequent to that time, that even though she ordered him to remove it and he did not do it, and she went on after that time and used that staircase, or permitted her tenants to use that staircase, then your verdict should be for the plaintiff."

There is no evidence that the defendant or her tenants made any use of the steps. There is testimony showing that the steps could not practically be used without considerable filling about the bank, and that there was no occasion to use them for the reason that the bath-house, to which they were designed to afford access, had not been erected. If the defendant knew nothing of these steps until after they had been placed upon her lot, and within a reasonable time she gave notice to the plaintiff to take them away, she would have done all that she was required to do under the circumstances. She could not very well remove them herself and there being no evidence that she either used them, or permitted her tenants to use them, we cannot find any proof of ratification through the use of the steps. The defendant had a perfect right to rent her estate and we believe that it would be unreasonable to place upon her the burden of a constant oversight of her tenants to see that they did not use the steps which from the want of proper surroundings were neither available nor led to anything which a tenant might require or could enjoy. The fact that the tenants *might* have passed over these steps at some time would not amount to their acceptance by the defendant. We think that the portion of the charge referred to would be likely to mislead the jury in reaching its verdict. The second exception of the defendant is overruled. The other exceptions of the defendant are sustained.

The case is remitted to the Superior Court for a new trial.

*James J. McGovern,* for plaintiff.
*Frank H. Wildes,* for defendant.